# Exhibit A

DEALY & SILBERSTEIN, LLP
William J. Dealy (WD 9776)
Milo Silberstein (MS 4637)
225 Broadway, Suite 1405
New York, New York 10007
(212) 385-0066

*Attorneys for Plaintiff Harvey Kesner*

JUDGE SCHEINDLIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

09 CV 4009

-------------------------------------------------------------------X

HARVEY KESNER,                                              Case No.:

                                    Plaintiff,
                                                           **COMPLAINT**
        - against -                                        ECF ACTION

HAYNES AND BOONE, LLP and TERRY CONNER,                    **Jury Trial Demanded**

                                    Defendants.

-------------------------------------------------------------------X

        Plaintiff HARVEY KESNER ("Kesner"), by his attorneys, Dealy & Silberstein, LLP,

complaining of the Defendants HAYNES AND BOONE, LLP ("HB") and TERRY CONNER

("Conner")(collectively, the "Defendants") alleges as follows:

                            **NATURE OF THE ACTION**

1. This is an action for (1) breach of contract; (2) breach of a Partnership agreement; (3)

    common law fraud; (4) quantum meruit; (5) promissory estoppel; (6) breach of fiduciary

    duty; (7) tortious interference with business relationships; (8) defamation; (9) conversion

    (10) an accounting; and (11) attorneys' fees, arising out of the wrongful termination and

    expulsion in March 2009 of Plaintiff Kesner from Defendant HB, where he had been a

    member of the Partnership.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked under 28 U.S.C. § 1332, based upon diversity of citizenship. The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391, because the events giving rise to this claim occurred in this district.

## THE PARTIES

4. Plaintiff Kesner resides in the State of New Jersey.

5. Defendant HB is a Texas limited liability partnership with its principal place of business located at 2323 Victory Avenue, Suite 700, Dallas, Texas, 75219 and has offices throughout Texas, as well as in New York, Washington D.C., California, Mexico and Moscow. Defendant HB's New York office is located at 1221 Avenue of the Americas, 26th Floor, New York, New York 10020.

6. At all relevant times, Defendant Conner has been the managing partner and Chief Executive Officer of Defendant HB, with a last known address of 7110 Lakewood Blvd., Dallas, Texas 75214.

## BACKGROUND FACTS

### Plaintiff Kesner's Recruitment By Defendant HB

7. Plaintiff Kesner is a licensed attorney, who has been admitted to practice law in the State of New York since 1990.

8. During his career, Plaintiff Kesner has practiced law as an attorney for the federal

government, several major national law firms and as a senior executive of a New York Stock Exchange listed company.

9. In 2002, Plaintiff Kesner established a highly regarded, nationally recognized law practice focusing on corporate finance and securities transactions, representing mid-sized public and private companies, investors, high net-worth individuals, hedge funds, venture capital investors and others.

10. During 2006, Plaintiff Kesner was prospering as a Partner at a New York City law firm with approximately sixty (60) lawyers where he earned an annual compensation comparable to his starting compensation at Defendant HB. Plaintiff Kesner's compensation at this law firm was based upon a fixed component and a percentage of his collections from clients he introduced to the firm, which were approximately $2.3 million per year.

11. Plaintiff Kesner's law practice which experienced dramatic growth from 2001 through 2006, was very successful, and was earning in excess of approximately $2.5 million per year by 2006.

12. Prior to 2006, Plaintiff Kesner's practice had become quite well known to investors, investment bankers, clients, law firms and recruiters as a skilled corporate/securities transactional law practice valued by numerous public companies and private individual clients. Plaintiff Kesner prepared numerous client SEC filings and reports for clients and his views and opinions were frequently sought by leading industry and law periodicals.

13. During 2006, Plaintiff Kesner was approached by Defendant HB's legal recruiter, who informed Plaintiff Kesner that Defendant HB sought to have Plaintiff Kesner join Defendant HB as a Partner in charge of the New York Business and Securities Regulation Group of Defendant HB.

14. The legal recruiter represented to Plaintiff Kesner that Defendant HB was a newcomer to the New York City legal community, and that Defendant HB had embarked on an aggressive growth campaign to expand beyond its Texas roots.

15. Seeking to establish a national and international presence, Defendant HB had undertaken an aggressive recruiting drive, adding offices in New York, Washington, DC, and Moscow in furtherance of its adopted "Vision 2020 Plan".

16. Defendant HB's legal recruiter informed Plaintiff Kesner that Defendant HB sought self-starters with sustaining practices in New York City, and that Plaintiff Kesner fit that criteria and would be able to play a material role in the New York City office of Defendant HB, and in the firm generally.

17. As a result of these representations by Defendant HB's legal recruiter, Plaintiff Kesner agreed to meet with Defendant HB.

18. Defendant HB's legal recruiter also developed a list of additional firms for Plaintiff Kesner to meet with that would offer Plaintiff Kesner a similar role.

19. During preliminary meetings in New York, Houston and Dallas during 2006, Robert Wilson ("Wilson"), then managing partner of Defendant HB, Defendant Conner, then second in command at Defendant HB, and Kenneth Bezozo ("Bezozo"), head of Defendant HB's New York office, reiterated promises of the firm's commitment to its "Vision 2020 Plan".

20. Plaintiff Kesner made it known to Defendant HB that he was not simply interested in changing firms, but that his goal was to manage a practice group and head a department, anchored by his existing practice.

21. Plaintiff Kesner was asked to produce a forecast for his first year with Defendant HB as a

condition to HB making an offer of partnership to him

22. Pursuant to this forecast, Plaintiff Kesner's existing practice was projected to generate approximately $2.4 million in revenues for the first year of his association with Defendant HB.

23. Plaintiff Kesner required associates and senior attorneys in order to achieve this projection and Plaintiff Kesner was promised support from existing staff of Defendant HB who would service Plaintiff Kesner's workload as well as work on matters generated by other Partners of the firm, under Plaintiff Kesner's supervision as Partner in charge of Defendant HB's New York Business and Securities Regulation Group.

24. Prior to uprooting his practice and the employment of others, Plaintiff Kesner requested a meeting with Michael Boone, one of the founders of Defendant HB and a permanent member of Defendant HB's Board of Directors, for assurance that Defendant HB was committed to a New York City office for the long term; that Defendant HB would support the efforts of Plaintiff Kesner in building and anchoring a corporate and financial practice in the New York City marketplace; and that Defendant HB's goals in New York City were not experimental or transient.

25. During that meeting, Plaintiff Kesner was repeatedly assured by Michael Boone that Defendant HB's "Vision 2020 Plan" clearly expressed the firm's seriousness in its dedication and commitment to establishing a New York City presence.

26. Plaintiff Kesner was also assured that Defendant HB rarely, if ever, removes Partners other than in cases of disbarment or situations involving wanton unethical behavior.

27. Defendant HB represented to Plaintiff Kesner that if he were to move his successful and growing practice to Defendant HB, Defendant HB would provide Plaintiff Kesner with a

long term home where he could continue to grow his practice with enhanced support and a collegial atmosphere.

28. This sentiment was repeated by other Partners and management members of Defendant HB with whom Plaintiff met in New York and Texas during his interviews.

29. Defendant HB even touted its unique and attractive retirement program for Partners which Plaintiff would participate in as an inducement for Plaintiff to join Defendant HB.

30. In numerous meetings during the summer of 2006, Plaintiff Kesner was assured by Bezozo, head of Defendant HB's New York City office, that if Plaintiff Kesner were to move his practice to Defendant HB, he would become a "key player for HB in New York."

31. Bezozo further stated to Plaintiff Kesner that the way to make the most money at Defendant HB was to "develop the most business."

32. Plaintiff Kesner was informed that Defendant HB recognized contributions that were not purely economic, such as helping build the New York City practice group Plaintiff Kesner was to lead, which ultimately grew to eleven (11) attorneys in various corporate and transactional disciplines.

33. These themes were repeated by Wilson, then managing partner and CEO of Defendant HB, as well as others with whom Plaintiff Kesner interviewed during visits with Defendant HB's Texas Partners.

34. Defendant Conner also reiterated these themes to Plaintiff Kesner during meetings held in New York City and Texas.

35. Thereafter, on or about August 9, 2006, Defendant HB communicated a written offer to Plaintiff Kesner to join Defendant HB.

36. Later in August 2006, based upon the representations of Defendants, Plaintiff Kesner accepted Defendant HB's offer and agreed to move his practice to Defendant HB to head Defendant HB's New York Business and Securities Regulation Group (the "Practice Group").

37. In or around August 2006, a vote of the Partnership of Defendant HB was held (the "Partnership"), in accordance with the then existing Partnership Agreement of Defendant HB, and the admission of Plaintiff Kesner to the Partnership was approved by the requisite vote of the Partnership, meaning that it was approved by Partners who owned aggregate Partnership Percentage Interests equal to or greater than seventy-five (75%) percent of Defendant HB.

38. On August 11, 2006, Plaintiff Kesner and Defendant HB entered into and executed the Partnership Agreement (originally dated as of December 31, 1988, as amended through the date of execution by Plaintiff Kesner), which provides, inter alia, for the admission and compensation of Partners of Defendant HB, as well as for operation, management and distribution of profits.

39. Shortly thereafter, Plaintiff Kesner assembled a full complement of attorneys and other professionals to work with him in his Practice Group in Defendant HB's New York City offices, each of whom also terminated their existing prior positions based upon Defendant HB's promises and representations.

**Management Structure of Defendant HB**

40. The Partnership Agreement of Defendant HB, together with the Bylaws, is the key operative agreement, and governs all relations among Partners and the relationship of Defendant HB and its Partners.

41. The Partnership Agreement provides inter alia that it is governed by Texas law.

42. Section 4.02 of the Partnership Agreement provides for the establishment of an Executive Committee.

43. Sections 3.02, 3.03 and 3.04 require that each Partner share in the profits, and that losses are to be based upon a partner's "Partnership Percentage Interest" and gives the Executive Committee the authority to determine the "Partnership Percentage" assigned to new Partners, and changes thereto, as well as establishment of reserves and similar economic considerations.

44. Defendant HB also adopted Bylaws (the "HB Bylaws") in order to provide further rules with respect to the management and operation of Defendant HB.

45. The HB Bylaws include provisions governing the responsibilities of the "Executive Committee" of the firm.

46. The HB Bylaws state, in relevant part, that the "[t]he principal functions of the Executive Committee are to determine, from time to time, (i) the compensation of the Partners in the Firm . . ."

47. In accordance with the HB Bylaws "[t]he Managing Partner is the Chief Executive officer of the Firm and shall perform the duties and exercise the powers that customarily appertain to that title, and shall have other duties and responsibilities prescribed by the Executive Committee from time to time... including "day-to-day administrative and policy decisions concerning the entire Firm."

48. The Managing Partner at Defendant HB serves on the Executive Committee of the firm and is the Chairman of, and presides at all meetings of, the Board of Directors of Defendant HB.

49. Section 4.01 of the Partnership Agreement provides that the "financial and professional business and affairs of the Firm shall be managed by the Executive Committee, other committees and individual Partners(s), all in accordance with the Bylaws of the Firm . . . [which] may delegate to any Partners(s) or committee of Partners any power, responsibility, authority, or function granted to the Executive Committee."

50. Wilson served as Managing Partner of Defendant HB until 2008, when Defendant Conner assumed the role and title of Managing Partner.

51. Defendant Conner, at all times relevant to the claims herein, served as Managing Partner, CEO, member of the Board of Directors and member of the Executive Committee of Defendant HB, and was delegated authority to perform all responsibilities attendant thereto, subject to the Partnership Agreement and the HB Bylaws.

52. In his aforementioned capacities, Defendant Conner, at all times relevant to the claims herein, had the authority and responsibility to negotiate and bind the firm for the purposes of Plaintiff Kesner's compensation and Partnership Percentage Interest.

53. In his capacities as Managing Partner and Chief Executive of Defendant HB, Defendant Conner owes the highest fiduciary duty to serve the interests of the Partners of Defendant HB, including at all relevant times Plaintiff Kesner, including a duty of good faith and fair dealing.

54. The Bylaws further provide that "[d]eterminations regarding admissions or expulsions of Partners are subject to the ratification of the Board of Directors and are subject to Section 4.06 of the Partnership Agreement."

55. Section 4.06 of the Partnership Agreement contains requirements for voting and the Approval of Partners when action by Defendant HB is required for certain events.

56. Pursuant to Section 4.06, the expulsion of a Partner requires the vote of Partners "at a meeting called to consider the particular action" who own aggregate Partnership Percentage Interests of seventy-five (75%) percent or more.

**Plaintiff Kesner's Strong Performance at Defendant HB**

57. As a Partner at Defendant HB for approximately two and a half years, Plaintiff Kesner helped Defendant HB improve its New York City presence and expanded Defendant HB's reputation and national visibility as a leading corporate and securities practice in mid-cap and small-cap markets.

58. Plaintiff Kesner received repeated praise from many of his colleagues at Defendant HB for his efforts.

59. As Plaintiff Kesner's tenure at Defendant HB progressed, Defendant HB's management continued to represent that it would provide him with a platform, including high quality lawyers and administrative and support staff, which would assist and support Plaintiff Kesner in further expanding his Practice Group.

60. Many such representations came directly from Defendant Conner and other members of the Executive Committee and Board of Directors.

61. Defendant HB repeatedly encouraged Plaintiff Kesner to develop and grow his practice, hire additional attorneys, and advised Plaintiff Kesner to "overhire" so as to build capacity in the New York City office, which Plaintiff Kesner set out to accomplish by building a corporate and securities group that peaked in 2008 at eleven (11) attorneys and two (2) paralegals.

62. Plaintiff Kesner and other members of his Practice Group routinely billed in excess of 2200-2400 hours during 2007, their first year with Defendant HB.

63. Plaintiff Kesner and the members of his Practice Group were also responsible for managing client relations, frequent public speaking engagements, writing articles, and appearances for Defendant HB.

64. As Plaintiff Kesner's practice grew, he and Defendant HB developed a burgeoning national reputation in financial and business circles.

65. The growth and recognition benefited Defendant HB and the development of its New York City office, and Defendant HB continues to benefit to this day from the attorneys remaining in Plaintiff Kesner's former Practice Group.

66. Prior to Plaintiff Kesner joining the firm, Defendant HB was a virtual unknown in this sector of legal transaction representation in which his Practice Group specialized.

67. By 2008, Plaintiff Kesner's Practice Group at Defendant HB had grown to fourth in National League Tables for Private Investment in Public Equity ("PIPE") transactions, as reported by Deal Flow Media.

68. In Plaintiff Kesner's first year with Defendant HB in 2007, his business plan projected $2.4 million in revenue for Defendant HB, which would result in compensation due to Plaintiff Kesner in the approximate amount he had earned at his prior firm.

69. However, in the year 2007, Defendant HB actually earned approximately $7 million from Plaintiff Kesner's Practice Group.

70. This approximately $7 million in earnings for the Practice Group far exceeded the projected $2.4 million by approximately $4.6 million in fees collected by Defendant HB.

71. The Partnership Agreement provides for a bonus to Partners in circumstances in which extraordinary contributions have been made.

72. However, despite Plaintiff Kesner exceeding his Practice Group's collection projections by nearly $4.6 million during 2007, his efforts in expanding Defendant HB's New York City corporate department, and growing Defendant HB's national recognition and reputation, Defendant HB did not pay Plaintiff Kesner a bonus for his 2007 business successes.

73. During Plaintiff Kesner's approximate two and a half year tenure with Defendant HB, his Practice Group collected cumulative billings in excess of $12 million with approximately $1-2 million of additional receivables collectible by Defendant HB following Plaintiff Kesner's wrongful termination and expulsion in March 2009.

74. Plaintiff Kesner's Practice Group at Defendant HB regularly exceeded expectations despite the onset of the most severe recession in twenty (20) years, hourly rate increases imposed by Defendant HB that were significantly higher than the rates that Plaintiff Kesner had previously charged, and other changes implemented by Defendant HB that Defendant HB knew or should have known could limit the development of the New York City Practice Group.

75. Throughout 2008, Plaintiff Kesner continued to receive praise and encouragement from Defendant HB management and Partners in the form of emails, phone calls, and personal remarks for the successful expansion of Defendant HB's New York City office.

76. In fact, in 2007, Bezozo was elevated to the Board of Directors of Defendant HB, in part, on the strength of the success and expansion of Defendant HB's New York City office.

**Offer By Defendant HB and Acceptance By Plaintiff Kesner of "2 Year Plan"/Compensation Agreement**

77. In an effort to familiarize himself with compensation scales for New York City Partners in similar sized practice groups, Plaintiff Kesner surveyed his options in New York City and

commenced dialogue with a number of New York City law firms, consultants and legal recruiters.

78. Based upon his knowledge of the New York market, Plaintiff Kesner realized that his compensation at Defendant HB, i.e. approximately fourteen (14%) percent of his Practice Group's collected revenues, was far below market compensation for successful group leaders in similar practices.

79. Consequently, Plaintiff Kesner commenced discussions with other law firms seeking to obtain an offer of engagement with another firm.

80. At the same time, Plaintiff Kesner sought to renegotiate his compensation with Defendant HB.

81. During these negotiations, Defendant HB agreed to fairly compensate Plaintiff Kesner and to grant Plaintiff Kesner an equitable adjustment of his compensation.

82. For his part, Plaintiff Kesner continually repeated his commitment to Defendant HB and his desire to have a long term relationship with Defendant HB.

83. However, despite Defendant HB's repeated representations that it would adjust Plaintiff Kesner's compensation, Plaintiff Kesner became concerned when his negotiations with Defendant HB began to drag on without an agreement being reached.

84. Plaintiff Kesner informed both Bezozo and Defendant Conner in numerous calls and meetings that Plaintiff Kesner was considering leaving Defendant HB with his Practice Group if Defendant HB did not improve and solidify its offers to adjust Plaintiff Kesner's compensation.

85. Plaintiff Kesner, in reviewing the marketplace, learned that a practice of this magnitude in

New York City was at the top echelon of the market and could command compensation significantly higher than Plaintiff Kesner was receiving at Defendant HB, including a multi-year commitment of between $2.5 to $3 million in compensation per year.

86. Negotiations between Plaintiff Kesner and Defendant HB continued for several months. However, the parties were too far apart. As a result, Plaintiff Kesner continued to go on interviews with the objective of relocating his practice.

87. Finally, in December 2007, Defendant HB made an improved compensation offer to Plaintiff Kesner.

88. This offer was communicated to Plaintiff Kesner first telephonically and then was confirmed in writing.

89. This offer by Defendant HB, categorized as a "2-year plan" promised Plaintiff Kesner compensation of $1.6 million for 2008 and a minimum of $2 million in 2009, plus a contribution on Plaintiff Kesner's behalf to Defendant HB's defined benefit plan in 2009 (the "2 Year Compensation Agreement").

90. Furthermore, as part of the 2 Year Compensation Agreement, Defendant HB offered Plaintiff Kesner an immediate bonus in the amount of $100,000.00 in January 2008 if Plaintiff Kesner stopped seeking employment elsewhere.

91. Additionally, as part of the 2 Year Compensation Agreement, Defendant HB agreed to pay Plaintiff Kesner an additional bonus in the amount of $100,000.00 payable in January 2009, if Plaintiff Kesner was to remain with Defendant HB through that date.

92. Plaintiff Kesner accepted the terms of the 2 Year Compensation Agreement and ceased his search for alternative employment.

93. Defendant HB acknowledged its offer of the 2 Year Compensation Agreement in an email from Defendant Conner to Plaintiff Kesner dated February 4, 2008 stating:

> "Bonus is and was contingent on your accepting our 2008 compensation proposal—thought you had accepted when we last talked, but have since learned I was wrong about that, which is unfortunate. If we can close loop on 2008 compensation proposal then very happy to get bonus amount sent ASAP."

94. Defendant HB further acknowledged Plaintiff Kesner's acceptance of the 2 Year Compensation Agreement in an email from Jim Miller to Plaintiff Kesner dated February 7, 2008 stating:

> "Terry has approved an increase in your draw from $25,000 to $40,000…This will go into effect on February 15, 2008…P.S.- Your $100,000 bonus payment will be sent overnight."

95. Defendant HB performed the terms of the 2 Year Compensation Agreement, including payment of both $100,000.00 bonuses, due in January 2008 and January 2009, evidencing Defendant's offer and Plaintiff Kesner's acceptance of the 2 Year Compensation Agreement.

96. Plaintiff Kesner and Defendant HB agreed that the bonuses included in the 2 Year Compensation Agreement to be given to Plaintiff Kesner were to be from Defendant HB's revenues.

97. The $100,000.00 bonus paid to Plaintiff Kesner in 2008 was paid from Defendant HB's revenues.

98. However, and as detailed further herein, while Plaintiff Kesner was led to believe that the $100,000.00 bonus he received in January 2009 was derived from Defendant HB's revenues, he subsequently learned that the $100,000.00 bonus he received in January 2009 was actually drawn from his Capital account at Defendant HB, rather than from Defendant HB's revenues.

99. In addition, Defendant HB never made the promised contributions on Plaintiff Kesner's behalf to Defendant HB's defined benefit plan in 2009.

## Plaintiff Kesner's Wrongful Termination By Defendants and Expulsion From Defendant HB

100. On January 16, 2009, Defendant Conner spoke with Plaintiff Kesner by telephone.

101. During this telephone call, Defendant Conner informed Plaintiff Kesner that he had made the decision to end Defendant HB's relationship with Plaintiff Kesner.

102. Defendant Conner did not offer any explanation as to why he and Defendant HB intended to breach the Partnership Agreement and to violate the 2 Year Compensation Agreement agreed to by Defendant HB and Plaintiff Kesner.

103. Defendant Conner informed Plaintiff Kesner that he must leave Defendant HB by the end of February 2009.

104. Based upon Defendant Conner's representations, Plaintiff Kesner feared he would be "locked out" of his office with no means to satisfy his obligations to clients.

105. Plaintiff Kesner resisted Defendant Conner's instructions that he had to leave Defendant HB.

106. However, Defendant Conner persisted, and submitted draft separation agreements which he informed Plaintiff Kesner he had to sign.

107. The terms of these separation agreements, which Plaintiff Kesner refused to sign, released Defendant HB and its partners from all liability for breach of the Partnership Agreement and the 2 Year Compensation Agreement and obligated Defendant HB to pay Plaintiff Kesner a nominal "per diem" separation payment until he withdrew from the

Partnership.

108. The proposed separation agreements contemplated payments to Plaintiff Kesner at a level far below that required by the 2 Year Compensation Agreement, in a daily amount of just several hundred dollars per day, and required Plaintiff Kesner to withdraw from the Partnership no later than the end of March 2009.

109. Defendant Conner represented to Plaintiff Kesner that the Partnership of Defendant HB was "resolute" in the decision that Plaintiff Kesner had to leave the firm.

110. However, upon information and belief, Defendant Conner's efforts to expel Plaintiff Kesner from the Partnership were conducted without any authority from the Partnership.

111. Upon information and belief, Defendant Conner acted "ultra vires" in terminating Plaintiff Kesner as a Partner of Defendant HB and violating Plaintiff Kesner's 2 Year Compensation Agreement with Defendant HB.

112. Defendant Connor forcibly removed Plaintiff Kesner from the Partnership of Defendant HB without a vote of the Partnership and by exerting maximum pressure on Plaintiff Kesner to leave.

113. Defendant Conner intimated that if Plaintiff Kesner would just accept the proposed separation agreement, he would be willing to tell Defendant HB's attorneys that Plaintiff Kesner and the firm simply could not reach financial terms for the ensuing year and that Plaintiff Kesner had chosen to leave of his own will.

114. In fact, after Plaintiff Kesner left Defendant HB, Defendant Conner provided false information to the media regarding Plaintiff Kesner's departure from Defendant HB.

115. Defendant Conner's misrepresentations to the media regarding Plaintiff Kesner's

separation from Defendant HB caused Plaintiff Kesner embarrassment in his profession and damaged his ability to gain new employment.

116.    Plaintiff Kesner refused to sign a separation agreement with Defendant HB and reiterated that Plaintiff Kesner wanted to continue his relationship with the firm.

117.    Without any regard whatsoever to the impact on the firm's clients, Plaintiff Kesner was effectively barred from performing his duties for his clients.

118.    On February 26, 2009, Defendants HB and Conner sent Plaintiff Kesner a written directive ordering him not to accept any new clients or work on any new matters.

119.    Thereafter, during February 2009 and the first part of March 2009, Defendants HB and Conner proceeded to dismantle Plaintiff Kesner's Practice Group by terminating associates, Of Counsel, and other administrative staff working for Plaintiff Kesner's Practice Group.

120.    During this period, Defendants HB and Conner deprived Plaintiff Kesner of access to the firm's resources to maintain his practice and to serve his clients.

121.    By letter dated March 11, 2009, a lawyer for Plaintiff Kesner informed Defendants that their actions constituted an anticipatory repudiation of the Partnership Agreement as well as the 2 Year Compensation Agreement, and demanded Defendants complete performance under the two (2) agreements.

122.    The March 11, 2009 letter also demanded that Defendants HB and Conner cease and desist from publishing false statements concerning Plaintiff Kesner.

123.    The March 11, 2009 letter further stated that if Defendants did not respond by the close of business on March 12, 2009, Plaintiff Kesner would deem his agreements as having been anticipatorily repudiated and Plaintiff Kesner would be left with no choice but to conclude

that Defendants had no desire to resolve the matter amicably.

124.    Defendants replied in a letter dated March 12, 2009 stating in pertinent part that:

> "We have now learned that Mr. Kesner has effectively withdrawn from the partnership, though without giving the notice required by the Partnership Agreement...We believe the Firm has been more than fair in its dealings with Mr. Kesner, particularly given the reasons for the separation. We assume that your letter constitutes a rejection of our pending separation proposal and the Firm will proceed accordingly."

125.    As a result of Defendants' response on March 12, 2009, Plaintiff Kesner was terminated from his employment with Defendant HB effective as of March 13, 2009.

**Failure to Pay Plaintiff Kesner For Work Performed In March 2009 and The January 2009 Bonus Required By The 2 Year Compensation Agreement**

126.    Defendant HB informed Plaintiff Kesner when he joined as Partner that he was to receive a semi-monthly draw.

127.    Upon information and belief, Partners get paid distributions in arrears semi-monthly by Defendant HB.

128.    On March 13, 2009, Defendants deposited into Plaintiff Kesner's bank account his first semi-monthly draw representing payment for the first two (2) weeks of March 2009, in the amount of $39,145.82.

129.    Later that same day, Defendants, without Plaintiff Kesner's permission, somehow reversed the $39,145.82 deposit from Plaintiff Kesner's account.

130.    As a result, Plaintiff Kesner was not paid the draw owed to him for the two (2) weeks he worked for Defendant HB in March 2009.

131.    Following his termination from Defendant HB in March 2009, Plaintiff Kesner learned that the $100,000.00 bonus that he had received in January 2009 pursuant to the terms of the

agreed upon 2 Year Compensation Agreement, had not been paid to him out of Defendant HB's revenues, but had instead been improperly deducted from Plaintiff Kesner's own Capital account at Defendant HB.

132.  Accordingly, rather than pay Plaintiff Kesner the $100,000.00 bonus, which it was obligated to do and purported to have done, Defendant HB in actuality just paid Plaintiff Kesner with his own money.

133.  At no time was Plaintiff Kesner informed by Defendant HB that Defendant HB would be withdrawing or had, in fact, withdrawn, the $100,000.00 from Plaintiff Kesner's Capital Account, nor did Plaintiff Kesner ever give Defendant HB any authority to do so.

134.  Defendants' heinous behavior forced Plaintiff Kesner into immediate unemployment, loss of benefits, loss of insurance for himself, his wife and his minor children, and severe hardship for himself and for his family.

135.  Moreover, Defendant HB retained several attorneys whom Plaintiff Kesner had brought to Defendant HB, and who subsequently began competing with Plaintiff Kesner in an attempt to retain the client relationships Plaintiff Kesner had built over many years.

136.  Defendant HB also interfered with valid requests by clients to transfer files to Plaintiff Kesner and interfered with Plaintiff Kesner's ability to represent and service the needs of his clients.

137.  All told, Defendant HB kept over $12 million in collections from Plaintiff Kesner's Practice Group received entirely from new clients who never previously had known or engaged Defendant HB and who became HB clients solely as a result of Plaintiff Kesner's efforts and relations, including over $300,000.00 alone during the months of January 2009 and February 2009 during the events leading up to Plaintiff Kesner's termination from

Defendant HB.

138.    In addition, Defendant HB retained valuable receivables and equity in clients, and the goodwill and franchise value of Plaintiff Kesner's practice built by Plaintiff Kesner over the previous seven (7) years.

139.    Defendants' acts and omissions have served to damage Plaintiff Kesner's reputation.

140.    Defendants' acts have been motivated by a desire to take Plaintiff Kesner's law practice and clients away from him.

141.    Defendants' acts and omissions have served to damage Plaintiff Kesner financially.

142.    Defendants' acts and omissions have served to damage Plaintiff Kesner's lifetime earning capacity.

**Continuous Tortious Interference By Defendant HB With Plaintiff Kesner's Practice and Defamation HB of Plaintiff Kesner by Defendant HB**

143.    Upon information and belief, in or around May 2010, Defendant HB communicated false and defamatory information to Plaintiff Kesner's current and prospective clients, colleagues, and other attorneys in the New York City area, to the effect that Plaintiff Kesner "is dirty" in the manner in which he conducts business.

144.    Upon information and belief, in or around May 2010, Defendant HB communicated false and defamatory information to Plaintiff Kesner's current and prospective clients, colleagues, and other attorneys in the New York City area, to the effect that Plaintiff Kesner was "terminated due to questionable practices."

145.    Upon information and belief, in or around May 2010, Defendant HB communicated false and defamatory information to Plaintiff Kesner's current and prospective clients, colleagues, and other attorneys and professionals in the New York City area, to the effect that Plaintiff

Kesner was terminated for "having relationships with clients that the firm did not wish to associate with."

146. Upon information and belief, Defendant HB has knowingly communicated these false and defamatory statements about Plaintiff Kesner in order to harm Plaintiff Kesner's business relationships and reputation in the legal community.

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT HB – BREACH OF 2 YEAR COMPENSATION AGREEMENT AND PARTNERSHIP AGREEMENT

147. Plaintiff Kesner repeats and realleges each and every allegation set forth in paragraphs 1 through 146 as if fully set forth herein.

148. The 2 Year Compensation Agreement and the Partnership Agreement were both valid and binding contracts between Plaintiff Kesner and Defendant HB regarding Plaintiff Kesner's compensation.

149. Defendants' unilateral termination of Plaintiff Kesner constitutes a breach of the 2 Year Compensation Agreement and the Partnership Agreement.

150. Plaintiff Kesner urged Defendants to reconsider their precipitous decision to remove Plaintiff Kesner from the Partnership and thereby anticipatorily breach the 2 Year Compensation Agreement and the Partnership Agreement.

151. Defendants refused to retract their decision to forcibly remove Plaintiff Kesner from the Partnership.

152. Defendants unequivocally informed Plaintiff Kesner in February 2009 that they were unwilling to perform the remainder of the 2 Year Compensation Agreement, which was set to expire by its terms on December 31, 2009.

153. Defendants' acts and omissions have served to damage Plaintiff Kesner's reputation.

154. Defendants' acts have been motivated by a desire to take Plaintiff Kesner's law practice and clients away from him.

155. Defendants' acts and omissions have served to damage Plaintiff Kesner financially.

156. Defendants' acts and omissions have served to damage Plaintiff Kesner's lifetime earning capacity.

157. As a result of the foregoing, Plaintiff Kesner has been damaged in an amount to be determined at trial, but believed to exceed fifteen million ($15,000,000.00) dollars.

### AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT HB - BREACH OF PARTNERSHIP AGREEMENT (Wrongful Expulsion)

158. Plaintiff Kesner repeats and realleges each and every allegation set forth in paragraphs 1 through 157 as if fully set forth herein.

159. Pursuant to Section 5.03 of the Partnership Agreement, a Partner may only be expelled by "Approval of the Partners."

160. Approval of the Partners, as defined in the Partnership Agreement, is the affirmative approval of the Partners who own aggregate Partnership Percentage Interest equal to or greater than seventy-five (75%) percent.

161. Upon information and belief, Plaintiff Kesner was forcibly removed without formal Approval of the Partners.

162. The Bylaws state, _inter alia_, that Executive Committee Members' determinations regarding admissions or expulsions of Partners are subject to the ratification of the Board of Directors and are also subject to the provisions set forth in Section 4.06 of the Partnership Agreement, which states that "when action by the Firm is required, including (i) to admit

new Partners (ii) to expel Partners, and (iii) to terminate the Partnership, the action may be taken by the Approval of the Partners at a meeting called to consider the particular action".

163. Upon information and belief, no such ratification was obtained, nor did Defendants comply with Section 4.06 of the Partnership Agreement, before forcibly removing Plaintiff Kesner from the Partnership.

164. Defendants never notified Plaintiff Kesner that Defendant HB was scheduling a Partnership Meeting to expel or terminate Plaintiff Kesner as a Partner from the Partnership.

165. Defendants' acts and omissions have served to damage Plaintiff Kesner's reputation.

166. Defendants' acts have been motivated by a desire to take Plaintiff Kesner's law practice and clients away from him.

167. Defendants' acts and omissions have served to damage Plaintiff Kesner financially.

168. Defendants' acts and omissions have served to damage Plaintiff Kesner's lifetime earning capacity.

169. As a result of the foregoing, Plaintiff Kesner has been damaged in an amount to be determined at trial, but believed to exceed fifteen million ($15,000,000.00) dollars.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANT HB - BREACH OF PARTNERSHIP AGREEMENT (Failure to Take Required Vote)

170. Plaintiff Kesner repeats and realleges each and every allegation set forth in paragraphs 1 through 169 as if fully set forth herein.

171. Section 4.04 of the Partnership Agreement expressly provides that each Partner has voting power equal to his Partnership Percentage Interest at the time a vote is taken.

172. Upon information and belief, no Partner was given the opportunity to exercise their right

to vote on whether to remove Plaintiff Kesner from the Partnership.

173. Upon information and belief, no vote of the Partnership of Defendant HB whatsoever has ever been taken by the Partnership regarding the removal of Plaintiff Kesner from the Partnership.

174. Upon information and belief, no notice of a Partnership Meeting regarding his termination was every given to Plaintiff Kesner.

175. Additionally, pursuant to Section 4.06(a) of the Partnership Agreement, "when action by the Firm is required, including (i) to admit new Partners (ii) to expel Partners, and (iii) to terminate the Partnership, the action may be taken by the Approval of the Partners at a meeting called to consider the particular action."

176. Upon information and belief, no such meeting was ever held prior to Plaintiff Kesner being forcibly removed from the Partnership and Plaintiff Kesner was never given notice of such a meeting

177. Defendants' acts and omissions have served to damage Plaintiff Kesner's reputation.

178. Defendants' acts have been motivated by a desire to take Plaintiff Kesner's law practice and clients away from him.

179. Defendants' acts and omissions have served to damage Plaintiff Kesner financially.

180. Defendants' acts and omissions have served to damage Plaintiff Kesner's lifetime earning capacity.

181. As a result of the foregoing, Plaintiff Kesner has been damaged in an amount to be determined at trial, but believed to exceed fifteen million ($15,000,000.00) dollars.

### AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANT HB - BREACH OF PARTNERSHIP AGREEMENT (Wrongful Transfer of Partner's Interest)

182. Plaintiff Kesner repeats and realleges each and every allegation set forth in paragraphs 1 through 181 as if fully set forth herein.

183. Upon information and belief, Defendants undertook the following precipitous and unauthorized actions in furtherance of Plaintiff Kesner's termination:

    a) Sent a written directive to Plaintiff Kesner prohibiting him from accepting new clients or working on new matters;

    b) Terminated Associates, Of Counsel, and other administrative staff working for Plaintiff Kesner; and

    c) Deprived Plaintiff Kesner of access to the Firm's resources to continue, maintain, and pursue his practice and to service his clients.

184. Pursuant to Section 11.03 of the Partnership Agreement, "no Partner and no one acting by authority of or for a Partner may, without the express written consent of the Executive Committee, pledge, hypothecate, or in any manner transfer his interest in the Partnership, or his interest in any of its assets, receivables, records, documents, files or clientele. All such rights and interest of each Partner are personal to him or her and are non-transferable and non-assignable."

185. Defendant HB seized and converted without authorization to its own, and the other remaining Partners' benefit, Plaintiff Kesner's Partnership interest in order to divert to their own benefit the valuable distributions, allocations, and rights to assets and receivables emanating therefrom owned by Plaintiff Kesner as a Partner, and to the documents, files, and clientele associated with Plaintiff Kesner.

186. The acts by Defendants to deprive Plaintiff Kesner from access to his office and the contents therein caused severe and irreparable damage to Plaintiff Kesner's relationships with his clients, and his reputation in the legal community.

187. Defendants' acts and omissions have served to damage Plaintiff Kesner's reputation.

188. Defendants acts have been motivated by a desire to take Plaintiff Kesner's law practice and clients away from him.

189. Defendants' acts and omissions have served to damage Plaintiff Kesner financially.

190. Defendants' acts and omissions have served to damage Plaintiff Kesner's lifetime earning capacity.

191. As a result of the foregoing, Plaintiff Kesner has been damaged in an amount to be determined at trial, but believed to exceed fifteen million ($15,000,000.00) dollars.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANT HB - BREACH OF PARTNERSHIP AGREEMENT (Unauthorized Withdrawal from Plaintiff Kesner's Capital Account)

192. Plaintiff Kesner repeats and realleges each and every allegation set forth in paragraphs 1 through 191 as if fully set forth herein.

193. Pursuant to the 2 Year Compensation Agreement, Plaintiff Kesner was entitled to receive a bonus in the amount of $100,000.00 for staying with Defendant HB through January 2009.

194. Plaintiff Kesner received a payment of $100,000.00 in January 2009, which Defendant HB characterized as payment of the January 2009 bonus.

195. Plaintiff Kesner subsequently discovered that the payment of $100,000.00, which he had been informed was payment of the bonus, had in fact actually been drawn from his Capital account.

196. Plaintiff Kesner neither requested a withdrawal of $100,000.00 from his Capital account, nor did Defendants advise Plaintiff Kesner at any time that such a withdrawal from his Capital account was being made.

197. Defendants were not authorized to make this withdrawal from Plaintiff Kesner's Capital account.

198. The $100,000.00 dispersed to Plaintiff Kesner, under the initial guise of it being his second bonus payment, was in violation of the express provisions of the Partnership Agreement regarding Capital account withdrawals.

199. As a result of the foregoing, Plaintiff Kesner has been damaged in the amount of one hundred thousand ($100,000.00) dollars, plus accrued interest thereon.

### AS AND FOR A SIXTH CAUSE OF ACTION AGAINST DEFENDANT HB – BREACH OF THE PARTNERSHIP AGREEMENT (Defendants' Failure to Remit Earned Distribution)

200. Plaintiff Kesner repeats and realleges each and every allegation set forth in paragraphs 1 through 199 as if fully set forth herein.

201. Pursuant to the Partnership Agreement, "each partner shall share in all net profits and losses of the Firm based on that Partner's Percentage Interest."

202. Plaintiff Kesner received distributions in arrears on a semi-monthly basis.

203. Plaintiff Kesner was a Partner in Defendant HB until March 13, 2009 and was owed his first distribution for the month of March.

204. Defendants deposited Plaintiff Kesner's semi-monthly draw for the month of March into his bank account on March 13, 2009 in the amount of $39,145.82. Later that day, Defendants somehow reversed the deposit without Plaintiff Kesner's permission.

205. Based upon the foregoing, Defendants have failed to pay Plaintiff Kesner the initial distribution owed to him for work performed during the first half of March 2009.

206. As a result of the foregoing, Plaintiff Kesner has been damaged in an amount to be determined at trial, but believed to exceed thirty nine thousand one hundred forty-five ($39,145.82) dollars and eighty-two cents, plus accrued interest thereon.

## AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST DEFENDANTS – COMMON LAW FRAUD

207. Plaintiff Kesner repeats and realleges each and every allegation set forth in paragraphs 1 through 206 as if fully set forth herein.

208. Upon information and belief, Defendants attempted to, and did in fact, defraud Plaintiff Kesner, by knowingly:

   a) entering into the 2 Year Compensation Agreement with Plaintiff Kesner, whereby Plaintiff Kesner was to receive a bonus of $100,000.00 in January 2008 and a bonus of $100,000.00 in January 2009;

   b) agreeing that these bonuses would come from Defendant HB's revenues;

   c) paying Plaintiff Kesner's January 2008 bonus out of Defendant HB's revenues;

   d) withdrawing $100,000.00 from Plaintiff Kesner's Capital account in or around January 2009 without obtaining authority from Plaintiff Kesner to do so;

   e) representing to Plaintiff Kesner that the $100,000.00 withdrawn from Plaintiff Kesner's Capital account was the January 2009 bonus owed to Plaintiff Kesner pursuant to the 2 Year Compensation Agreement, which was supposed to be paid out from the firm's revenues; and

   f) deliberately misleading Plaintiff Kesner about the deceitful nature of

Defendants' activities, namely the $100,000.00 being charged to Plaintiff Kesner's Capital account instead of being a bonus from Defendant HB's revenues

209. Defendants knowingly made representations regarding the $100,000.00 bonus payable in January 2009 to Plaintiff Kesner that were material and false.

210. When Defendants made these representations to Plaintiff Kesner, Defendants knew the representations were false.

211. Defendants made these representations with the intent that Plaintiff Kesner rely upon and act upon the misrepresentations.

212. Plaintiff Kesner's reliance on the representations of Defendants caused economic injury to Plaintiff Kesner, especially to his law practice

213. As a result of the foregoing, Plaintiff Kesner has been damaged in the amount of one hundred thousand ($100,000.00) dollars, plus interest accrued thereon.

214. In perpetrating this fraud upon Plaintiff Kesner, Defendants are guilty of oppression, fraud and malice, and have acted in conscious disregard of Plaintiff Kesner's rights, entitling Plaintiff Kesner to recover punitive damages in an amount to be determined at trial, but believed to exceed five million ($5,000,000.00) dollars.

## AS AND FOR AN EIGHTH CAUSE OF ACTION AGAINST DEFENDANT HB – QUANTUM MERUIT

215. Plaintiff Kesner repeats and realleges each and every allegation set forth in paragraphs 1 through 214 as if fully set forth herein.

216. At all relevant times, Plaintiff Kesner provided valuable services to Defendant HB.

217. Defendant HB accepted Plaintiff Kesner's services.

218. Defendant HB had reasonable notice that Plaintiff Kesner expected to be compensated for his services.

219. Pursuant to the 2 Year Compensation Agreement, Plaintiff Kesner was a Partner in Defendant HB until March 13, 2009 and was owed his first distribution for the month of March for valuable services provided.

220. Defendants deposited Plaintiff Kesner's semi-monthly draw for the month of March into his bank account on March 13, 2009 in the amount of $39,145.82. Later that day, Defendants reversed the deposit.

221. Plaintiff Kesner was entitled to receive a bonus in the amount of $100,000.00 for services provided to Defendant HB through January 2009.

222. Plaintiff Kesner received a payment of $100,000.00 bonus in January 2009, which Defendant HB characterized as payment of the January 2009 bonus.

223. Plaintiff Kesner subsequently discovered that the payment of $100,000.00, which he had been informed was payment of the bonus, had in fact actually been drawn from his Capital account.

224. Plaintiff Kesner neither requested a withdrawal of $100,000.00 from his Capital account, nor did Defendants advise Plaintiff Kesner that such a withdrawal from his Capital account was being made.

225. Defendants were not authorized to make this withdrawal from Plaintiff Kesner's Capital account.

226. The $100,000.00 dispersed to Plaintiff Kesner, under the initial guise of it being his second bonus payment, was in violation of the express provisions of the Partnership

Agreement regarding Capital account withdrawals.

227. Based upon the foregoing, Defendants have failed to pay Plaintiff Kesner the initial distribution owed to him for work performed during the first half of March 2009 and his second bonus payment in the amount of $100,000.00.

228. As a result of the foregoing, Plaintiff Kesner has been damaged in an amount to be determined at trial, but believed to exceed one hundred thirty nine thousand one hundred forty-five ($139,145.82) dollars and eighty-two cents, plus accrued interest thereon.

## AS AND FOR A NINTH CAUSE OF ACTION AGAINST DEFENDANT HB – PROMISSORY ESTOPPEL

229. Plaintiff Kesner repeats and realleges each and every allegation set forth in paragraphs 1 through 228 as if fully set forth herein.

230. Defendant HB made a promise to Plaintiff Kesner to carry out all of the terms of the 2 Year Compensation Agreement, including the payment of a bonus in the amount of $100,000.00 in January 2009.

231. Plaintiff Kesner reasonably and substantially relied upon Defendant HB's promise to his detriment.

232. Plaintiff Kesner's reliance upon Defendant HB's promise was foreseeable by Defendant HB.

233. Injustice can be avoided only by enforcing Defendant HB's promise for all sums due to Plaintiff Kesner for the balance of 2009 pursuant to the 2 Year Compensation Agreement, including without limitation, payment of the $100,000.00 bonus, plus accrued interest thereon.

## AS AND FOR AN TENTH CAUSE OF ACTION AGAINST DEFENDANTS – BREACH OF FIDUCIARY DUTY

234.　Plaintiff Kesner repeats and realleges each and every allegation set forth in paragraphs 1 through 233 as if fully set forth herein.

235.　In entering into the Partnership Agreement with Plaintiff Kesner, Plaintiff Kesner reposed trust and confidence in the Defendants, to among other things, deal with him fairly in all of their affairs.

236.　Defendants knew of and accepted such trust and confidence at the time they entered into the Partnership Agreement and 2 Year Compensation Agreement with Plaintiff Kesner.

237.　Plaintiff Kesner reposed his trust and confidence in Defendants and reasonably relied on the Defendants' superior knowledge and expertise in managing the Firm and each Partner's individual Capital accounts and compensation.

238.　At all relevant times, Defendant HB owed a fiduciary duty of loyalty to Plaintiff Kesner as a member of its Partnership to act in Plaintiff Kesner's best interest.

239.　At all relevant times, Defendant Conner, as the Managing Partner and CEO of Defendant HB, as a member of the Board of Directors, and as a member of the Executive Committee of HB who exercised a great deal of authority and control over the HB Partnership, owed a fiduciary duty to act in Plaintiff Kesner's best interest.

240.　Defendants breached their fiduciary duty to Plaintiff Kesner by terminating Plaintiff Kesner from the Partnership in direct violation of the Partnership Agreement and the 2 Year Compensation Agreement.

241.　Defendants breached their fiduciary duty to Plaintiff Kesner by making a $100,000.00 withdrawal from Plaintiff Kesner's Capital account without his knowledge, authority, or

permission.

242. Defendants breached their fiduciary duty to Plaintiff Kesner by representing to Plaintiff that the withdrawal from his Capital account was actually the 2009 bonus owed to him pursuant to the 2 Year Compensation Agreement.

243. Defendants' acts and omissions have served to damage Plaintiff Kesner's reputation.

244. Defendants' acts have been motivated by a desire to take Plaintiff Kesner's law practice and clients away from him.

245. Defendants' acts and omissions have served to damage Plaintiff Kesner financially.

246. Defendants' acts and omissions have served to damage Plaintiff Kesner's lifetime earning capacity.

247. As a result of the foregoing, Plaintiff Kesner has been damaged in an amount to be determined at trial, but believed to exceed fifteen million ($15,000,000.00) dollars.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION AGAINST DEFENDANTS - TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

248. Plaintiff Kesner repeats and realleges each and every allegation set forth in paragraphs 1 through 247 as if fully set forth herein.

249. Prior to joining Defendant HB, Plaintiff Kesner had established a successful law practice and had developed numerous business relationships, all of which he brought to Defendant HB.

250. Once Plaintiff Kesner joined HB as a Partner in 2007, Plaintiff Kesner's clients and business contacts produced significant revenues and profit for Defendant HB during Plaintiff Kesner's tenure with Defendant HB.

251.    Defendants were aware of Plaintiff Kesner's strong relationships with financial and corporate clients, which was an important reason why Defendant HB recruited Plaintiff Kesner to join its firm as a Partner.

252.    After Defendants' breached the Partnership Agreement by forcibly removing Plaintiff Kesner from the Partnership, Defendants intentionally interfered with Plaintiff Kesner's business relationships by depriving Plaintiff Kesner from access to his office and preventing him from fulfilling the duties owed to Plaintiff Kesner's clients.

253.    Defendants also intentionally published false statements regarding Plaintiff Kesner's separation from Defendant HB.

254.    Moreover, Defendant HB tortiously interfered with Plaintiff Kesner's business relationships by dissuading Plaintiff Kesner's clients from retaining Plaintiff Kesner as their legal counsel after Plaintiff Kesner was terminated from Defendant HB.

255.    Defendants' tortious interference with Plaintiff Kesner's business relations proximately caused economic injury to Plaintiff Kesner through damages to his law practice and caused Plaintiff Kesner to suffer meaningful actual damages.

256.    Plaintiff Kesner's actual damages resulted from Defendants' malice and/or actual fraud which entitle Plaintiff Kesner to exemplary damages pursuant to Texas Civil Practice and Remedies Code Section 41.003(a).

257.    As a result of the foregoing, Plaintiff Kesner has been damaged in an amount to be determined at trial, but believed to exceed fifteen million ($15,000,000.00) dollars.

### AS AND FOR A TWELFTH CAUSE OF ACTION AGAINST DEFENDANT HB – DEFAMATION

258.    Plaintiff Kesner repeats and realleges each and every allegation set forth in paragraphs 1

through 257 as if fully set forth herein.

259. At all relevant times, Plaintiff Kesner was and still is a licensed attorney in the State of New York.

260. At all relevant times, Plaintiff Kesner has conducted business as an attorney in the State of New York prior to the utterance of the false and defamatory words hereinafter set forth, and has always borne a good reputation and credit as an attorney, businessman, and otherwise.

261. That in or around May 2010, a Partner in Defendant HB, in the presence of one or more persons maliciously spoke of and concerning Plaintiff Kesner and his business and trade as an attorney, the following words "Harvey is dirty."

262. In or around May 2010, a Partner in Defendant HB, in the presence of one or more persons, maliciously spoke of and concerning Plaintiff Kesner and his business and trade as an attorney, the following words "Harvey was terminated due to questionable ethical practices."

263. In or around May 2010, a Partner in Defendant HB, in the presence of one or more persons maliciously spoke of and concerning Plaintiff Kesner and his business and trade as an attorney, the following words "Harvey had relationships with clients that the firm did not wish to associate with."

264. That the words so spoken were false and defamatory, were known to Defendant HB to be false and defamatory, and were spoken willfully and maliciously with the intent to damage Plaintiff Kesner's good name, reputation, and credit as an attorney.

265. That by reason of the words so spoken by Defendant HB, Plaintiff Kesner has been

injured in his good name and reputation as an attorney and has suffered great pain and mental anguish, and has been help up to ridicule and contempt by his clients, colleagues, and the public, all to his damage in an amount to be determined at trial, but believed to exceed fifteen million ($15,000,000.00) dollars.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION AGAINST DEFENDANT HB-CONVERSION

266.    Plaintiff Kesner repeats and realleges each and every allegation set forth in paragraphs 1 through 265 as if fully set forth herein.

267.    At all relevant times, Plaintiff Kesner was, and still is, entitled to the possession of his clientele, files, records, documents, assets, and receivables.

268.    In or around February and March 2009, Defendants took Plaintiff Kesner's clientele, files, records, documents, assets, and receivables from Plaintiff Kesner's possession and converted same for Defendants' own use.

269.    In or around February and March 2009, Plaintiff Kesner demanded the immediate return of his clientele, files, records, documents, assets, and receivables but Defendants failed and refused, and Defendants continue to fail and refuse to return the property to Plaintiff Kesner.

270.    Defendants' acts have served to damage Plaintiff Kesner's reputation.

271.    Defendants' acts have been motivated by a desire to take Plaintiff Kesner's law practice and clients away from him.

272.    Defendants' acts have served to damage Plaintiff Kesner financially.

273.    Defendants' acts have served to damage Plaintiff Kesner's lifetime earning capacity.

274.    As a result of the foregoing, Plaintiff Kesner has been damaged in an amount to be

determined at trial, but believed to exceed fifteen million ($15,000,000.00) dollars.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION AGAINST DEFENDANT HB-ACCOUNTING

275.　Plaintiff Kesner repeats and realleges each and every allegation set forth in paragraphs 1 through 274 as if fully set forth herein.

276.　As a result of Defendants' actions, Plaintiff Kesner has been wrongfully excluded from the affairs of the Partnership.

277.　As a result of Defendants' actions, Plaintiff Kesner has been wrongfully excluded from access to Partnership property.

278.　Defendants' actions were without written or verbal justification.

279.　Upon information and belief, Defendants' actions were willful.

280.　Title 4, Chapter 153 of the Texas Business Organizations Code, Limited Partnerships law, Section 153.551 provides, in pertinent part, as follows:

A.　A domestic limited partnership shall maintain the following records in its principal office in the United States or make the records available in that office not later than the fifth day after the date on which a written request under Section 153.552(a) is received:

- - -

5.　Unless contained in the written partnership agreement, a written statement of:

a. The amount of the cash contribution and a description and statement of the agreed value of any other contribution made by each partner

- - -

      6.     books and records of the accounts of the limited partnership

281.    Plaintiff Kesner is entitled to a prompt accounting of the business and assets of the Partnership in accordance with Texas Business Organizations Code, Limited Partnerships law, and to the payment of his share of such business and assets.

282.    Plaintiff Kesner has no adequate remedy at law.

## AS AND FOR A FIFTEENTH CAUSE OF ACTION AGAINST DEFENDANT HB - ATTORNEYS' FEES

283.    Plaintiff Kesner repeats and realleges each and every allegation set forth in paragraphs 1 through 282 as if fully set forth herein.

284.    Pursuant to § 38.001, *et seq.* of the Texas Civil Practice & Remedies Code, Plaintiff Kesner seeks to recover his attorneys' fees incurred in the prosecution of his claims against Defendants.

285.    Plaintiff Kesner is entitled to recover any attorneys' fees he reasonably and necessarily incurs in this lawsuit because of Defendant HB's breach of contract.

286.    Plaintiff Kesner is entitled to recover any attorneys' fees he reasonably and necessarily incurs in this lawsuit under the theory of quantum meruit.

## CONDITIONS PRECEDENT

287.    All conditions precedent to Plaintiff Kesner's claims for relief against Defendants have been sought, satisfied or waived.

      **WHEREFORE**, Plaintiff Kesner, hereby respectfully request Judgment against Defendants as follows:

(1)     On the First Cause of Action for Breach of the 2 Year Compensation

        Agreement and the Partnership Agreement, for Plaintiff Kesner and

        against Defendants in an amount to be determined, but believed to exceed fifteen

        million ($15,000,000.00) dollars;

(2)     On the Second Cause of Action for Breach of the Partnership Agreement, for

        Plaintiff Kesner and against Defendants in an amount to be determined, but

        believed to exceed fifteen million ($15,000,000.00) dollars;

(3)     On the Third Cause of Action for Breach of the Partnership Agreement, for

        Plaintiff Kesner and against Defendants in an amount to be determined, but

        believed to exceed fifteen million ($15,000,000.00) dollars;

(4)     On the Fourth Cause of Action for Breach of the Partnership Agreement, for

        Plaintiff Kesner and against Defendants in an amount to be determined, but

        believed to exceed fifteen million ($15,000,000.00) dollars;

(5)     On the Fifth Cause of Action for Breach of the Partnership Agreement, for

        Plaintiff Kesner and against Defendants in an amount to be determined, but

        believed to exceed one hundred thousand ($100,000.00) dollars, plus interest

        accrued thereon;

(6)     On the Sixth Cause of Action for Breach of the Partnership Agreement, for

        Plaintiff Kesner and against Defendants in an amount to be determined, but

        believed to exceed thirty nine thousand one hundred forty-five ($39,145.82)

        dollars and eighty-two cents, plus interest accrued thereon;

(7)     On the Seventh Cause of Action for Common Law Fraud, for Plaintiff Kesner and

        against Defendants, for Plaintiff Kesner and against Defendants in an amount to

be determined, but believed to exceed one hundred thousand ($100,000.00) dollars, plus interest accrued thereon;

(8) On the Eighth Cause of Action for Quantum Meruit, for Plaintiff Kesner and against Defendants in the amount of one hundred thirty-nine thousand one hundred forty five ($139,145.82) dollars and eighty-two cents, plus accrued interest thereon.

(9) On the Ninth Cause of Action for Promissory Estoppel, for Plaintiff Kesner and against Defendants in an amount to be determined at trial, but believed to exceed one hundred thousand ($100,000.00) dollars, plus accrued interest thereon.

(10) On the Tenth Cause of Action for Breach of Fiduciary Duty, for Plaintiff Kesner and against Defendants in an amount to be determined, but believed to exceed fifteen million ($15,000,000.00) dollars;

(11) On the Eleventh Cause of Action for Tortious Interference with Business Relations, for Plaintiff Kesner and against Defendants in an amount to be determined, but believed to exceed fifteen million ($15,000,000.00) dollars;

(12) On the Twelfth Cause of Action for Defamation for Plaintiff Kesner and against Defendants in an amount to be determined, but believed to exceed fifteen million ($15,000,000.00) dollars;

(13) On the Thirteenth Cause of Action for Conversion for Plaintiff Kesner and against Defendants in an amount to be determined, but believed to exceed fifteen million ($15,000,000.00) dollars;

(14) On the Fourteenth Cause of Action for Accounting, for Plaintiff Kesner and against Defendants;

(15)     On the Fifteenth Cause of Action for Attorneys' Fees, for Plaintiff Kesner and

against Defendants;

and for the costs, fees and, where appropriate, reasonable attorneys' fees and expenses of this

action, together with such other and further relief as the Court deems just and proper

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Kesner demands a trial

by jury on all claims properly triable by a jury.

Dated: New York, New York
       May 14, 2010

Yours, etc.

DEALY & SILBERSTEIN, LLP

By: _____
       Milo Silberstein, Esq.
225 Broadway, Suite 1405
New York, New York 10007
(212) 385-0066
*Attorneys for Plaintiff*
*Harvey Kesner*

JS 44C/SDNY  *JUDGE SCHEINDLIN*
REV. 5/2010

# CIVIL COVER SHEET



The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Harvey Kesner | Haynes and Boone, LLP and Terry Conner |

| ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Dealy & Silberstein, LLP, 225 Broadway, Suite 1405, New York, NY 10007 | MAY 1 4 2010 |

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 U.S.C. 1332, Diversity of Citizenship

Has this or a similar case been previously filed in SDNY at any time? No? [✓] Yes? [ ]   Judge Previously Assigned

If yes, was this case Vol.[ ] Invol.[ ] Dismissed. No [ ] Yes [ ]   If yes, give date _____ & Case No. _____

*(PLACE AN [x] IN ONE BOX ONLY)*                    NATURE OF SUIT

**ACTIONS UNDER STATUTES**

| TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 AGRICULTURE | [ ] 422 APPEAL 28 USC 158 | [ ] 400 STATE REAPPORTIONMENT |
| | | [ ] 620 OTHER FOOD & DRUG | [ ] 423 WITHDRAWAL 28 USC 157 | [ ] 410 ANTITRUST |
| **CONTRACT** | [ ] 310 AIRPLANE | [ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881 | | [ ] 430 BANKS & BANKING |
| [ ] 110 INSURANCE | [ ] 315 AIRPLANE PRODUCT LIABILITY | | | [ ] 450 COMMERCE |
| [ ] 120 MARINE | [ ] 320 ASSAULT, LIBEL & SLANDER | [ ] 365 PERSONAL INJURY - MED MALPRACTICE | | [ ] 460 DEPORTATION |
| [ ] 130 MILLER ACT | [ ] 330 FEDERAL EMPLOYERS' LIABILITY | [ ] 365 PERSONAL INJURY PRODUCT LIABILITY | **PROPERTY RIGHTS** | [ ] 470 RACKETEER INFLU-ENCED & CORRUPT ORGANIZATION ACT (RICO) |
| [ ] 140 NEGOTIABLE INSTRUMENT | | [ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY | [ ] 820 COPYRIGHTS | |
| [ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT | [ ] 340 MARINE | | [ ] 830 PATENT | [ ] 480 CONSUMER CREDIT |
| | [ ] 345 MARINE PRODUCT LIABILITY | **PERSONAL PROPERTY** | [ ] 840 TRADEMARK | [ ] 490 CABLE/SATELLITE TV |
| [ ] 151 MEDICARE ACT | [ ] 350 MOTOR VEHICLE | [ ] 370 OTHER FRAUD | | [ ] 810 SELECTIVE SERVICE |
| [ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS) | [ ] 355 MOTOR VEHICLE PRODUCT LIABILITY | [ ] 371 TRUTH IN LENDING | **SOCIAL SECURITY** | [ ] 850 SECURITIES/COMMODITIES/EXCHANGE |
| | [ ] 360 OTHER PERSONAL INJURY | [ ] 380 OTHER PERSONAL PROPERTY DAMAGE | [ ] 861 HIA (1395ff) | [ ] 875 CUSTOMER CHALLENGE 12 USC 3410 |
| [ ] 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS | | [ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY | [ ] 862 BLACK LUNG (923) | |
| | | **LABOR** | [ ] 863 DIWC/DIWW (405(g)) | |
| [ ] 160 STOCKHOLDERS SUITS | | [ ] 710 FAIR LABOR STANDARDS ACT | [ ] 864 SSID TITLE XVI | [ ] 890 OTHER STATUTORY ACTIONS |
| [X] 190 OTHER CONTRACT | | [ ] 720 LABOR/MGMT RELATIONS | [ ] 865 RSI (405(g)) | [ ] 891 AGRICULTURAL ACTS |
| [ ] 195 CONTRACT PRODUCT LIABILITY | | [ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT | **FEDERAL TAX SUITS** | [ ] 892 ECONOMIC STABILIZATION ACT |
| [ ] 196 FRANCHISE | **ACTIONS UNDER STATUTES** | [ ] 740 RAILWAY LABOR ACT | [ ] 870 TAXES (U.S. Plaintiff or Defendant) | [ ] 893 ENVIRONMENTAL MATTERS |
| | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 OTHER LABOR LITIGATION | [ ] 871 IRS-THIRD PARTY 26 USC 7609 |
| **REAL PROPERTY** | [ ] 441 VOTING | [ ] 510 MOTIONS TO VACATE SENTENCE 20 USC 2255 | [ ] 791 EMPL RET INC SECURITY ACT | [ ] 894 ENERGY ALLOCATION ACT |
| [ ] 210 LAND CONDEMNATION | [ ] 442 EMPLOYMENT | | | [ ] 895 FREEDOM OF INFORMATION ACT |
| [ ] 220 FORECLOSURE | [ ] 443 HOUSING/ACCOMMODATIONS | | **IMMIGRATION** | [ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE |
| [ ] 230 RENT LEASE & EJECTMENT | [ ] 444 WELFARE | [ ] 530 HABEAS CORPUS | [ ] 462 NATURALIZATION APPLICATION | |
| [ ] 240 TORTS TO LAND | [ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT | [ ] 535 DEATH PENALTY | [ ] 463 HABEAS CORPUS-ALIEN DETAINEE | [ ] 950 CONSTITUTIONALITY OF STATE STATUTES |
| [ ] 245 TORT PRODUCT LIABILITY | | [ ] 540 MANDAMUS & OTHER | | |
| [ ] 290 ALL OTHER REAL PROPERTY | [ ] 446 AMERICANS WITH DISABILITIES -OTHER | [ ] 550 CIVIL RIGHTS | [ ] 485 OTHER IMMIGRATION ACTIONS | |
| | [ ] 440 OTHER CIVIL RIGHTS | [ ] 555 PRISON CONDITION | | |

*Check if demanded in complaint:*

[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.? IF SO, STATE:

DEMAND $_____  OTHER _____   JUDGE _____  DOCKET NUMBER_____

*Check YES only if demanded in complaint*
JURY DEMAND: [✓] YES [ ] NO

NOTE: Please submit at the time of filing an explanation of why cases are deemed related.

*(PLACE AN x IN ONE BOX ONLY)*      **ORIGIN**

☑ 1 Original Proceeding    ☐ 2a. Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from (Specify District)    ☐ 6 Multidistrict Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge Judgment

☐ 2b. Removed from State Court AND at least one party is pro se.

*(PLACE AN x IN ONE BOX ONLY)*      **BASIS OF JURISDICTION**      *IF DIVERSITY, INDICATE CITIZENSHIP BELOW. (28 USC 1322, 1441)*

☐ 1 U.S. PLAINTIFF    ☐ 2 U.S. DEFENDANT    ☐ 3 FEDERAL QUESTION (U.S. NOT A PARTY)    ☑ 4 DIVERSITY

**CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)**

(Place an [X] in one box for Plaintiff and one box for Defendant)

|  | PTF | DEF |  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [X] 5 |
| CITIZEN OF ANOTHER STATE | [X] 2 | [X] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

**PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)**

Harvey Kesner
65 Mayhew Drive
South Orange, New Jersey 07079
Essex

**DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)**

Haynes and Boone, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Dallas

Terry Conner
7110 Lakewood Blvd.
Dallas, Texas 75214
Dallas

**DEFENDANT(S) ADDRESS UNKNOWN**
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Check one:    THIS ACTION SHOULD BE ASSIGNED TO:    ☐ WHITE PLAINS    ☑ MANHATTAN
(DO NOT check either box if this a PRISONER PETITION.)

DATE 5|14|10    SIGNATURE OF ATTORNEY OF RECORD

RECEIPT #     *MM*

ADMITTED TO PRACTICE IN THIS DISTRICT
[ ] NO
[X] YES (DATE ADMITTED Mo. _11_ Yr. _97_ )
Attorney Bar Code # MS 4637

Magistrate Judge is to be designated by the Clerk of the Court.

MAG. JUDGE ELLIS

Magistrate Judge _____ is so Designated.

Ruby J. Krajick, Clerk of Court by _____ Deputy Clerk, DATED _____ .

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)